#### IN THE UNITED STATES DISTRICT COURT
#### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. CR-24-334-SLP |
| v. ) | |
| ) | |
| ASHLEY SHANTA JENNINGS, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the Court is Defendant's Motion [Doc. No. 18] to Exclude Statements by Ashley Jennings Pursuant to *Jackson v. Denno*.[1] The Government has filed a Response [Doc. No. 23]. Defendant did not file a reply. The matter, therefore, is at issue and ready for determination.

**I.   Background**

Defendant is charged in a single-count Indictment with false statement, in violation of 18 U.S.C. § 1001(a)(2). Defendant moves to exclude statements she made to federal law enforcement agents on March 31, 2023. Defendant argues that the statements were made while she was in custody and that she was not given any *Miranda* warning.[2] Defendant requests a hearing. She asserts that the statements were not recorded and the law enforcement reports "do not include descriptive information about exactly where the questioning took place, how long she was questioned, or how many other law enforcement

---

[1] 378 U.S. 368 (1964).

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

agents were present." Mot. at 5. She argues, therefore, that a hearing is necessary to determine whether she was in custody, whether a *Miranda* warning was required or given and whether her statements were made knowingly and voluntarily. *Id*.

The Government opposes a hearing and contends that Defendant intends to use the hearing as "a fishing expedition for purposes of discovery." Resp. at 5. The Government argues that because she was present for each interview, Defendant has within her knowledge any facts necessary to support suppression of the statements. Relying on Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, the Government contends Defendant should be required to file "definite, specific, detailed and nonconjectural allegations to support her claim that a *Miranda* warning was required and her statements were involuntary. *Id*. at 5-6. Alternatively, the Government argues that Defendant was not in custody when the statements were made and, therefore, no *Miranda* warning was required to be given. *Id*. at 6-8. Additionally, the Government argues that Defendant's statements to law enforcement were voluntary. *Id*. at 8-10.

## II.    Defendant's Request for an Evidentiary Hearing

As a preliminary matter, the Court denies Defendant's request for an evidentiary hearing. Where a defendant disputes the facts surrounding an alleged confession, she "is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of h[er] confession are actually and reliably determined." *Jackson*, 378 U.S. at 380. Here, however, Defendant fails to identify any facts to support her Motion, nor did she file a reply to dispute any facts alleged by the Government. Consequently, she is not entitled to an evidentiary hearing. *See United States v. Riddle*, 731 F. App'x 771, 780 (10th Cir. 2018)

("A defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact . . . [a]nd to satisfy that burden, the motion to suppress must raise factual allegations that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact are in issue." (cleaned up, citations omitted)).

### III.     Relevant Facts[3]

On March 30, 2023, Brett Stephens, a Task Force Officer (TFO) assigned to the United States Marshal Service Fugitive Task Force (MFTF), identified Defendant as a person that may have knowledge about the location of Isaac Clinton Allen, a fugitive under investigation for a murder charge. At approximately 9:00 a.m. on that date, TFO Stephens contacted Defendant and conducted an interview of her inside the front seat of his unmarked patrol car. He explained to Defendant that he was with the United States Marshal Service (USMS) and was looking for Allen.

Defendant told TFO Stephens that she had known Allen for only a short time and had not spoken to him since March 14, 2023. She allowed TFO Stephens to review her phone and showed him phone data purportedly showing the last text message between Defendant and Allen occurred on March 14, 2023. She also told TFO Stephens she had heard rumors about a murder warrant, but she checked online databases and did not find one. TFO Stephens advised Defendant that any false information provided by her about Allen or any assistance to Allen would both be crimes. TFO Stephens gave Defendant an

---

[3] These facts are set forth in the Government's Response, *see id*. at 1-4.

opportunity to change her story or provide more information but Defendant stated she did not know anything else. The interview concluded. Defendant's Motion challenges her two contacts with law enforcement made the following day, March 31, 2023.

In the early morning of March 31, 2023, at approximately 1:30 a.m., TFO Stephens and USMS Deputy Darrell Clark obtained information that Defendant had, on March 27, 2023, provided Allen with a phone and taken him to an address in Newalla, Oklahoma. Based on this information, TFO Jennings and Deputy Clark went to Defendant's residence to conduct a follow-up investigation.

They interviewed Defendant in TFO Stephen's vehicle, asking her if she would speak to them there. TFO Stephens sat in the driver's seat and Deputy Clark sat in the back seat. Defendant sat in the front passenger seat. After a few preliminary statements by TFO Stephens, Defendant told the officers that she had lied to them in her previous interview and she acknowledged that she had given Allen a phone and taken him to the Newalla address. She then used a map on a phone to provide the exact address and she identified the individual who lived at that address. The entire interview lasted approximately five to ten minutes.

Deputy Clark then left for Newalla. TFO Stephens and Defendant relocated to Defendant's living room. At no point during this interaction was Defendant advised that she was detained or arrested and Defendant was never handcuffed.

The MFTF did not locate Allen at the Newalla address. Later that morning, two more TFOs, Wes Cadena and Chad Pope, conducted another interview with Defendant. When they arrived, Defendant invited them inside her house. TFOs Cadena and Pope

explained to Defendant that they were focused on trying to locate Allen. Defendant told them that she had provided Allen with a phone, $150, and a ride to Newalla. Defendant agreed to assist the MFTF in locating Allen to get him to surrender or turn his location over to police. At no point did the MFTF force their way into Defendant's house, or handcuff Defendant. At no point did Defendant ask TFOs Cadena and Pope to leave.

Defendant's Motion challenges the two March 31, 2023 interviews, identifying them each as "interrogations." *See* Mot. at 2-3. However, she does not identify a single fact that serves as the basis for her suppression request. And, as stated, Defendant did not file a reply nor has she otherwise presented any facts to dispute the Government's recount of the circumstances surrounding the challenged interrogations.

## IV.    Discussion

The Government does not dispute that law enforcement did not *Mirandize* Defendant. The issue before the Court, therefore, is whether Defendant was in custody at the time of the interrogations at issue such that a *Miranda* warning was required to be given. *See United States v. Cortez*, 965 F.3d 827, 840 (10th Cir. 2020) ("*Miranda* warnings only need to be given once a suspect is in custody and faces questioning that constitutes interrogation." (internal quotation marks and citation omitted)).[4]

In her own Motion, Defendant acknowledges that she "was not taken into custody on March 31, 2023." *See* Mot. at 3. But Defendant seeks an evidentiary hearing on the

---

[4] The Court assumes, without deciding, that the questioning of Defendant constituted an interrogation. Although the Government refers to the questioning as "interviews" it has left this issue unaddressed.

issue of whether, though not arrested, the circumstances surrounding Defendant's questioning rose to the level of a custodial interrogation. *See id.*

"An individual is in custody when a reasonable person in the suspect's position would understand his or her situation as 'the functional equivalent of formal arrest.'" *Cortez*, 965 F.3d at 841 (quoting *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007)). This is an objective inquiry that considers the totality of the circumstances to include: "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [the individual] aware that she was free to refrain from questions, or to otherwise end the interview." *Revels*, 510 F.3d at 1275.

In its Response, the Government summarizes the circumstances surrounding Defendant's interrogations:

> On two separate occasions on March 31, 2023, Jennings was interviewed by members of the [United States Marshal Service Fugitive Task Force (MFTF)]. On each occasion, there were two members of the MFTF speaking with Jennings. On one occasion, Jennings was briefly interviewed in the front seat of TFO Stephen's vehicle [] before moving to Jenning's living room. On the second occasion, the entire conversation occurred in her living room. On both occasions, the MFTF *asked* Jennings if she would speak with them. . . . .
>
> At no point was Jennings informed that she was under arrest. At no point was Jennings placed in handcuffs. While Jennings was advised that lying to the MFTF or assisting Allen would be crimes, at no point was Jennings threatened with arrest. Instead, the MFTF made clear that their priority was in locating Allen. At no point did Jennings ask the MFTF to leave her house. At no point was Jennings transported away from her house to a more police-dominated location.

Resp. at 7-8 (emphasis in original).

The Court finds nothing to suggest Defendant's questioning was custodial.  The atmosphere was not "police-dominated."  Defendant gave her permission to be questioned and the questioning took place with no more than two officers present.  Although Defendant was advised that giving false information could subject her to charges, the questioning took place over a short period of time and there is no evidence that the officers were combative, abusive, accusatory or coercive.  This finding is further compelled by Defendant's willingness to speak to the officers a second time on the same day.  Moreover, there is no indication that Defendant did not understand that she was free to end the questioning.

The Tenth Circuit has found that circumstances like those presented here do not rise to the level of a custodial interrogation.  *See, e.g., United States v. Lamy*, 521 F.3d 1257, 1263 (10th Cir. 2008) (initial interview conducted by two officers in a common area of the defendant's home did not constitute a police-dominated atmosphere nor did second interview conducted in the agents' car, parked outside the home, with defendant in front passenger seat compel the conclusion that his freedom was curtailed to a degree similar to arrest); *see also United States v. Jones*, 523 F.3d 1235, 1238, 1240-41 (10th Cir. 2008) (holding defendant was not in custody during a forty-five minute conversation in police officer's vehicle when officer told defendant she was free to leave).  Accordingly, Defendant was not required to be given any *Miranda* warning.

Defendant further argues an evidentiary hearing is necessary to determine whether her statements were voluntary.  But once again, Defendant offers no facts to suggest her statements were not voluntary or dispute any facts set forth in the Government's Response.

7

Even where *Miranda* is not implicated, a defendant's statements must still be found to have been given voluntarily. *See, e.g., United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020) (recognizing that the Fifth Amendment's due process clause "erects its own barrier to the admission of a defendant's inculpatory statements"). A look at the totality of the circumstances governs this analysis as well, and factors relevant to the inquiry include: "the defendant's age, education level, whether the defendant was advised of his or her constitutional rights, the length of his or her detention, the nature of the questioning, and any physical punishment such as deprivation of food or sleep." *Id*. at 1250-51 (cleaned up). The Government must prove the voluntariness of the statement by a preponderance of the evidence. *Id*. at 1251.

As the Government argues, nothing about the interviews suggests Defendant's will was overcome. Defendant is a bail bondsman licensed in Oklahoma and thus has some familiarity with the criminal justice system. The interviews were short in duration and occurred in Defendant's home or the front seat of the vehicle of the MFTF officers which was parked outside Defendant's home. Defendant was not in custody and nothing suggests that the nature of the questioning was coercive, nor is there any evidence that any physical punishment was threatened or used.

## V. **Conclusion**

In sum, Defendant has failed to set forth any facts to suggest a violation of *Miranda* or her due process rights. Defendant had the opportunity to challenge the Government's recitation of the facts, but opted not to do so. Under these circumstances, Defendant's Motion is DENIED and an evidentiary hearing is not warranted.

IT IS SO ORDERED this 4th day of December, 2024.

                                                 SCOTT L. PALK
                                                 UNITED STATES DISTRICT JUDGE

9